IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

TERRY L. SMITH,)
)
      Plaintiff,)
)
v.) CIVIL ACTION NO.: CV506-031
)
JO ANNE B. BARNHART,)
Commissioner of Social Security,)
)
      Defendant.)

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Morton J. Gold, Jr., ("the ALJ" or "ALJ Gold") denying his claim for Disability Insurance Benefits and Supplemental Security Income. Plaintiff urges the Court to reverse the ALJ's decision and enter an award finding Plaintiff disabled, or, in the alternative, to remand this case for a proper determination of the evidence. Defendant asserts that the Commissioner's decision is supported by substantial evidence and should be affirmed.

Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income payments on May 22, 2003, alleging that he became disabled on March 19, 2003, due to back, left shoulder, and neck pain. (Tr. at 22.) After his claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On June 8, 2005, ALJ Gold held a hearing at which Plaintiff appeared with counsel and testified. Don Harrison, a vocational expert, also testified at this hearing. (Tr. at 20.) ALJ Gold found Plaintiff was not disabled within the meaning of the Act. (Tr. at 27.) The Appeals Council

denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 8.)

Plaintiff, born on October 21, 1962, was forty-three (43) years old when ALJ Gold issued his decision. He has a high school education. (Tr. at 21.) His past relevant work experience includes employment as a mechanical maintenance supervisor, mechanical maintenance repairer, and veterinarian assistant. (Id.)

## ALJ'S FINDINGS

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140, 107 S. Ct. at 2287. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-141, 107 S. Ct. at 2291. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed

2

disabled. Yuckert, 482 U.S. at 141, 107 S. Ct. at 2291. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work. Id. If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is able to make adjustments to other work in the national economy, considering his age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142, 107 S. Ct. at 2291.

In the instant case, the ALJ followed this sequential process to determine that, after the alleged onset date of March 19, 2003, there was no evidence Plaintiff engaged in substantial gainful activity. (Tr. at 25.) At Step Two, the ALJ determined Plaintiff had a back problem, which was an impairment considered severe within the Act. (Tr. at 26.) However, the ALJ also determined Plaintiff's medically determinable impairment did not meet or medically equal a listed impairment. (Id.) The ALJ found Plaintiff retained the maximum residual functional capacity to lift and carry no more than thirty (30) pounds at a time and should avoid working at heights and climbing ladders, ropes, and scaffolds at all times. ALJ Gold also found Plaintiff could individually climb ramps and stairs and could stoop, crawl, and bend no more that two and a half (2 1/2) hours in an eight-hour workday. At the next step, ALJ Gold concluded Plaintiff could not perform his past relevant work which required the performance of work-related activities precluded by his residual functional capacity. (Id.) The ALJ concluded at the fifth and final step, considering Plaintiff's age, educational background, work experience, and residual functional capacity, that Plaintiff was capable of making a successful adjustment to perform the following jobs

3

which existed in significant numbers in the national economy: small products assembler; production assembler; light fixture inspector; and gasket inspector. All of these jobs were classified as light, unskilled work. (Tr. at 27.)

## ISSUES PRESENTED

Plaintiff asserts the ALJ's finding as to his residual functional capacity is unsupported by evidence in the record because the ALJ failed to "properly refute" the treating physician's opinion. (Pl.'s Br., p. 12.) Plaintiff also asserts ALJ Gold failed to consider all of his limitations.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard

4

requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

## DISCUSSION AND CITATION OF AUTHORITY

I.  **ALJ Gold properly credited the opinion of Plaintiff's treating physician.**

Plaintiff contends ALJ Gold improperly discredited the restrictions his orthopedic surgeon assigned to him. According to Plaintiff, the ALJ appears to state that, because the restrictions determined by Dr. Randall O'Brien and Philip Seuss (a physical therapist) were given as a result of an attorney's efforts, these restrictions are invalid. Plaintiff contends the ALJ failed to properly refute the treating physician's opinion, and therefore, it should be accepted as true. Plaintiff also contends ALJ Gold discussed videotapes which were presented to Dr. O'Brien in Plaintiff's 2004 workers' compensation claim. Plaintiff asserts ALJ Gold used statements by Dr. O'Brien, including his statement that he could not tell if the videotapes depicted Plaintiff, to support his determination as to Plaintiff's limitations. Plaintiff avers if the proper medical evidence is credited in this case, the vocational expert's statement that the hypothetical person with these limitations could not return to his past relevant work or perform any other jobs which existed in the national economy should be recognized.

Defendant asserts the ALJ found Plaintiff retained the residual functional capacity to perform a wide range of work at the light exertional level. Defendant also asserts the ALJ's

AO 72A
(Rev. 8/82)

determination in this regard is supported by substantial evidence, as ALJ Gold considered Plaintiff's treatment notes, all of the medical records of evidence, and assessments completed by Dr. O'Brien. Defendant states Mr. Suess' opinion was inconsistent with the assessments and opinions of Dr. O'Brien, and Mr. Suess' opinion was properly discounted. Defendant contends ALJ Gold specifically discussed the letter sent by Plaintiff's workers' compensation attorney in which Dr. O'Brien agreed with Mr. Suess' opinion and properly discounted this letter.

It is well-established that the opinion of a treating physician "'must be given substantial or considerable weight unless good cause is shown to the contrary.'" Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause" exists when: (1) the treating physician's opinion is not supported by the record; (2) the record supports a finding inconsistent with the treating physician's opinion; or (3) the treating physician's opinion is conclusory or inconsistent with his own medical records. Id. at 1241. When the ALJ determines that "good cause" exists to disregard a treating physician's opinion, the ALJ must clearly articulate the reasons supporting this decision. Id. When the Commissioner rejects the opinion of the treating physician, he must give "explicit and adequate" reasons for the rejection. Elam v. Railroad Retirement Board, 921 F.2d 1210, 1215 (11th Cir. 1991).

ALJ Gold noted Plaintiff began seeing Dr. O'Brien in January 2003 due to a back injury he received the previous month. ALJ Gold also noted Dr. O'Brien released Plaintiff to perform light duty activities, but Plaintiff was fired from his job in February 2003 because a laboratory report revealed he tested positive for cocaine. The ALJ observed Dr. O'Brien noted in March 2003 that Plaintiff could perform desk work. Although there was a note

6

dated April 16, 2003, indicating Plaintiff was unable to return to work pending surgical treatment (Tr. at 403), Dr. O'Brien informed Russell Wallace, an attorney, by letter dated June 10, 2003, this notation was not in his or his nurse's handwriting. (Tr. at 22, 396.) ALJ Gold noted Plaintiff's continuing treatment with Dr. O'Brien throughout 2003. On February 23, 2004, Dr. O'Brien informed Mr. Wallace that he released Plaintiff to return to light duty work. Dr. O'Brien noted in June 2004 that, although Plaintiff complained of continued pain and limitations, his examination revealed Plaintiff's surgical scars were well-healed and there was no evidence of permanent neurological deficit with only mild muscle spasms. Dr. O'Brien also noted Plaintiff reached maximum medical improvement and could lift no more than twenty (20) pounds and should avoid working at heights. (Tr. at 23, 363.) Approximately two months later, Dr. O'Brien stated his previous occupational assessment was unchanged, despite Plaintiff's complaints of increased symptoms and having not returned to work. ALJ Gold noted Dr. O'Brien disagreed with the radiologist's interpretation of an MRI; Dr. O'Brien found no evidence of a central disc protrusion, and the changes the radiologist described as "burnt out diskitis" were post-surgical changes from arthrodesis. (Tr. at 24.)

ALJ Gold observed Mr. Suess prepared a functional capacity assessment of Plaintiff on March 8, 2005, at the request of counsel's husband, who is also an attorney. ALJ Gold also observed Mr. Suess wrote a letter in an attempt to explain his opinion that Plaintiff could only work for a two to three hour workday, whether he was sitting, standing, walking, or any combination of these three. ALJ Gold noted the opinion of Mr. Suess, a physical therapist, was not recognized as an opinion from an acceptable medical source; however, even though Mr. Suess was not an acceptable medical source, the ALJ nevertheless

considered this assessment as information from "another source" pursuant to the Regulations. (Tr. at 24.) ALJ Gold opined Mr. Suess' assessment was not entitled to any significant weight because it was unsupported by the credible evidence of record. Specifically, ALJ Gold determined the medical evidence failed to show Plaintiff had medically determinable impairments to his neck, shoulder, or hands which would result in any functional limitations, despite Mr. Suess' opinion to the contrary. The ALJ observed Mr. Suess' assessment was contradicted by Dr. O'Brien's findings. The ALJ also observed Plaintiff was treated by two other physical therapists, as prescribed by Dr. O'Brien; however, Mr. Suess was not one of these therapists. The ALJ further observed that Plaintiff's attorney referred him to Mr. Suess. Additionally, ALJ Gold found Mr. Suess' finding as to Plaintiff's residual functional capacity to be of no "special significance", as this determination is reserved for the Commissioner of the Social Security Administration. (Tr. at 25.)

ALJ Gold noted Dr. O'Brien's opinion that if the videotapes he was given contained footage of Plaintiff, the activities were not consistent with Plaintiff's appearances in his office or to the physical therapists. Dr. O'Brien noted the individual in the videotapes (who he could not determine was Plaintiff, as the quality of the tapes was poor) would be fit for moderate level duty, which entailed lifting up to thirty pounds. (Tr. at 25, 366.) ALJ Gold opined Dr. O'Brien's assessments in June and August 2004, discussed above, were well-supported by the evidence, entitled to great evidentiary weight, and valid physical capacities evaluations.

Finally, ALJ Gold noted Tom Hackel, Plaintiff's attorney during his workers' compensation case, wrote Dr. O'Brien a letter in which Dr. O'Brien was asked to circle

AO 72A
(Rev. 8/82)

"agree" or "disagree" as to Plaintiff's residual functional capacity Mr. Suess determined. Dr. O'Brien circled "agree", with the exception of finding Plaintiff could not bend or stoop at all. (Tr. at 25, 437.) ALJ Gold observed this was not supported by the evidence which showed there had been no change in Plaintiff's abilities and limitations since his earlier evaluations. For this reason, ALJ Gold stated Dr. O'Brien's opinion indicated in the letter from Mr. Hackel was contradicted and of no evidentiary weight.

It is evident ALJ Gold not only considered Dr. O'Brien's findings, but found his findings credible and consistent with the evidence as a whole; the only exception to this is Dr. O'Brien's agreement with Mr. Suess' determination as to Plaintiff's residual functional capacity. ALJ Gold did not find Dr. O'Brien's agreement to be supported by his own records, and ALJ Gold stated a claimant's residual functional capacity is to be determined by the Commissioner. ALJ Gold did not appear to give any weight to Dr. O'Brien's opinion that, if the videotapes were of Plaintiff, the activities would have been inconsistent with Plaintiff's presentation to him and the physical therapists. Rather, ALJ Gold found Dr. O'Brien's assessments in June and August 2004 to be credible. Because ALJ Gold did not find Mr. Suess' assessment compelling, he was not required to include those limitations in the hypothetical posed to the vocational expert.[1] ALJ Gold's determination as to Plaintiff's residual functional capacity is supported by substantial evidence, and the correct legal standards were applied.

---

[1] "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Williams v. Barnhart, 140 Fed. Appx. 932, 936 (11th Cir. 2005) (quoting Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)). However, the hypothetical need only include the impairments which the ALJ accepts as true. McKay v. Apfel, 1999 WL 1335578, *7 (M.D. Ala. Dec. 9, 1999) (citing Haynes v. Shalala, 26 F.3d 812, 815 (8th Cir. 1994)).

## II.  ALJ Gold considered all of Plaintiff's impairments.

Plaintiff avers ALJ Gold did not consider the combined effects of all of his limitations in evaluating his claim for disability. Plaintiff alleges the ALJ did not appropriately consider his need to use a cane which Dr. O'Brien recommended he use. Plaintiff asserts the ALJ did not properly evaluate his complaints of neck pain and upper extremity weakness because the ALJ ignored Dr. O'Brien's statement in this regard. Plaintiff also asserts Dr. O'Brien's statement corroborated the testimony he provided at the hearing.

Defendant asserts ALJ Gold found the medical evidence before him showed conditions which precluded work at the medium through heavy exertional levels, not the disabling level of functional limitation and pain testified to by Plaintiff. Defendant also asserts ALJ Gold considered Plaintiff's subjective allegations regarding his symptoms and resulting limitations, in conjunction with the other evidence of record, and found them credible to the extent they were consistent with an ability to perform a wide range of work at the light exertional level.

In order to award benefits based on subjective complaints of pain, the following is required: (1) evidence of an underlying medical condition and either (2) objective medical evidence which confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); Sewell v. Bowen, 792 F.2d 1065, 1068 (11th Cir. 1986). The Commissioner must consider a plaintiff's subjective allegations of pain if the above standard is met. McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987). If the ALJ decides not to credit a plaintiff's subjective pain testimony, the ALJ must articulate and

express adequate reasons for doing so. Holt, 921 F.2d at 1223; Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1986).

ALJ Gold noted Plaintiff's allegation that he was disabled since December 2002. ALJ Gold stated the evidence revealed Plaintiff underwent surgery in June 2003, and in less than a year, there was solid arthrodesis with no evidence of permanent neurological deficit and only mild muscle spasms. ALJ Gold also stated the evidence revealed that Plaintiff tested positive for cocaine after he suffered his injury on the job, even though Plaintiff denied having used cocaine. ALJ Gold observed Plaintiff was terminated from his job due to the positive drug test, not because of medical reasons. ALJ Gold found the evidence of record did not reveal any medically determinable severe impairments to Plaintiff's shoulder, neck, or hands. ALJ Gold determined Plaintiff's testimony and statements regarding his symptoms and functional limitations were not fully credible based on these contradictions. (Tr. at 26.) The ALJ noted Dr. O'Brien may have prescribed a cane for Plaintiff in March 2003, but there were no other notations in the record up to the date of the hearing of any further medical orders for a cane. (Tr. at 24.)

ALJ Gold opined there was no medically objective evidence in the record which would confirm the severity of pain Plaintiff alleged to have in his shoulder, neck, or hands. At best, the evidence Plaintiff points to reveals Plaintiff experienced numbness in his hands, but it was improving (Tr. at 267, 376), and Dr. O'Brien was to refer Plaintiff to a specialist for his neck. (Tr. at 25.) This does not equate to a finding of disabling conditions. ALJ Gold expressed adequate reasons for not fully crediting Plaintiff's subjective complaints of pain.

11

In sum, ALJ Gold's determination that Plaintiff retained the residual functional capacity to perform a wide-range of work at the light exertional level is supported by substantial evidence.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

**SO REPORTED** and **RECOMMENDED**, this 7th day of February, 2007.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)